```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

PAUL MAZANT, ET AL.                         CIVIL ACTION

VERSUS                                      04-0057

VISIONEERING, INC.                          SECTION B(4)
```

                              OPINION

Before the Court are two proposed judgments in the above-captioned case.  After review of the proposed judgments and applicable law, and for the reasons that follow, judgment will be entered in Plaintiff's favor; however, reductions for comparative fault will be reflected in the judgment in accordance with the jury's comparative fault allocations between Defendant Visioneering and Lockheed Martin, Plaintiff's employer (Intervenor).

Defendant contends that when the jury determined that the failure to engage in point-load testing was a superceding or intervening cause of Plaintiffs' harm, the jury ultimately rendered a defense verdict.

> In determining the propriety of special
> interrogatories, we inquire into several
> specific factors:(i) whether, when read as a
> whole in conjunction with the general charge
> the interrogatories adequately presented the
> contested issues to the jury; (ii) whether the
> submission of the issues to the jury was
> "fair"; and (iii) whether the "ultimate
> questions of fact" were clearly submitted to
> the jury.

*First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1577 (5th Cir. 1996) (internal citations and quotations omitted).  Here, the general charge in conjunction with the interrogatories adequately presented the contested issues.  The charge was fair.  Both sides had an opportunity to review and object to the charges and interrogatories presented to the jury.  The ultimate questions of fact were clearly submitted to and decided by the jury.

The case against Visioneering was premised on the LPLA.  The LPLA clearly states, and this Court's jury charges reflected, that the LPLA establishes the exclusive theories of manufacturer liability for damage caused by their products.  LA. REV. STAT. § 9:2800.52; *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 706 (5th Cir. 1995).

Plaintiffs contend the jury's finding in interrogatory number 5 does not preclude recovery.  Plaintiffs note that

Louisiana discarded the common law terminology relied upon by Defendant in favor of a duty-risk analysis.  *See Younger v. Marshall Indus.,* 618 So. 2d 866, 872-73 (La. 1993) ("[W]e have chose to apply a duty-risk analysis in determining the extent of a party's liability.").  The Court's instruction to the jury recognized the jury *could* find more than one cause of Plaintiff's harm.  This Court, in considering the application of *Younger* to the LPLA, noted that *Younger* rejected the intervening acts terminology but did not reject the analytical value in considering intervening acts, finding the fourth factor under duty-risk analysis considers the effects of intervening acts.  *McAuslin v. Grinnel Corp.*, No. 97-775, 2000 WL 165542, at *3 (E.D. La. Nov. 3, 2002).  This Court also acknowledged, "Comparative fault applies in products liability cases . . . ." *Tolliver v. Naor*, No. 99-0586, 2001 WL 1356264, at * 2 (E.D. La. Nov. 2, 2001).

   The Court instructed the jury that the law may recognize more than one cause of damages and that the jury should resolve the issue by deciding whether Plaintiff would probably not have suffered the claimed damages in the absence of Defendant's actions.  In light of these instructions, the Court finds that the jury considered superceding/intervening cause and still concluded

3

Defendant was 30% liable. Moreover, combined with Lockheed Martin's failure to perform point-load testing and Defendant's failure to properly seek authorization for this obviously needed testing, post-design, the jury's comparative fault findings were reasonable and not precluded by their intervening cause findings. Particularly, the jury expressly found that the failure to perform point-load testing, while superceding or intervening cause, was a failure of both Defendant and Lockheed Martin.  This finding, again, is buttressed by evidence that while Defendant and Lockheed Martin were bickering over procedural hurdles to conduct same, this accident occurred.

Defendant fails to acknowledge that had it performed the testing on even a single platform,[1] the defect would probably have been discovered.  Defendant was found negligent for failing to perform point-load testing of the product before releasing it into use.  Defendant considered point-load testing necessary and brought it to Lockheed Martin's attention.  Even with the ambiguities surrounding whether Lockheed Martin subsequently

---

[1] Under the contract, Defendant was required to perform proof-load testing on one platform.  Defendant suggested point-load testing would also be beneficial.  While it is undisputed the contract did not provide for such testing, it is disputed whether Defendant was later authorized to do so.  Defendant argues it was not able to take any action not authorized by the contract without express written consent.

authorized such testing, given the potential harm that could arise from a panel section giving away and that Defendant was using a new material in construction based on a former design, the jury found, based on the evidence, that Defendant should have performed the testing as part of the design.  Further, the jury's verdict is based on evidence that point-load testing was unreasonably delayed due to disagreement and confusion between Defendant and Lockheed concerning authorization.  The jury's verdict reasonably considered Defendant and Lockheed Martin's conduct to be significant and comparative roles in causing this accident.  Accordingly, judgment will be entered based on the jury's findings.

New Orleans, Louisiana, this 22nd day of June, 2006.

UNITED STATES DISTRICT JUDGE